# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3243
_____

Brittany J. Buckley

*Plaintiff - Appellant*

v.

Hennepin County, et al.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 22, 2020
Filed: August 16, 2021
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

In December 2017, depressed about her father's death, Brittany Buckley had been drinking for two days and threatened self-harm. A friend called 911 to request a welfare check and let police officers into Buckley's apartment when they arrived. The officers spoke with Buckley and called an ambulance. Paramedics Anthony D'Agostino, Katherine Kaufmann, and Johnathan Thomalia arrived, conversed briefly with Buckley, and determined she needed to go to the hospital. Buckley objected; the

paramedics advised she was on a medical transportation hold.  When Buckley continued objecting, the officers and paramedics handcuffed her and carried her to the ambulance, where she was placed on a gurney and secured by cuffing each arm to a rail, with a shoulder harness, and hip, thigh, and ankle straps.  The paramedics decided to inject her with a sedative.  Buckley objected to being injected with an unknown medication, to no avail.  The commonly used sedative was ketamine. Buckley immediately developed serious respiratory distress.  The paramedics manually ventilated her, administered atropine, and used suction to remove excess saliva.  At the Hennepin County Medical Center, Buckley was diagnosed with acute hypoxia (low oxygen) respiratory failure, a known complication of ketamine, and was promptly intubated into the following day.  This lawsuit followed.

A major focus of Buckley's Complaint and her briefs on appeal is Hennepin County's so-called "ketamine trials," two studies the County conducted on the use of ketamine as a pre-hospital sedative for agitated patients.  Buckley asserts 42 U.S.C. § 1983 compensatory and punitive damage claims against paramedics D'Agostino, Kaufmann, and Thomalia for injecting her with ketamine without her consent, and against physicians who allegedly implemented ambulance protocols while conducting the second study, both in their individual and official capacities.  She also asserts claims of <u>Monell</u> liability[1] against Hennepin County, several of its health care facilities, and the individual defendants for developing and implementing a county-wide ketamine protocol. Buckley's Complaint alleged that defendants used excessive force, violated her right to bodily integrity, and acted with deliberate indifference in violation of the Fourth Amendment and her right to substantive due process under the Fourteenth Amendment.

---

[1] <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658 (1978).

-2-

The district court[2] granted defendants' motion for judgment on the pleadings, see Fed. R. Civ. P. 12(c), dismissing Buckley's federal § 1983 claims with prejudice and declining to exercise supplemental jurisdiction over her pendent state law claims. The court concluded: (i) "the paramedics' decision to inject Buckley with ketamine while responding to a medical emergency did not violate Buckley's right to be free from excessive force under the Fourth Amendment," (ii) "Buckley fails to allege a violation of her substantive due process right to bodily integrity," (iii) "Buckley also fails to allege a violation of her substantive due process rights premised on Defendants' [medical] deliberate indifference," (iv) alternatively, the paramedics are entitled to qualified immunity, (v) the physician defendants are entitled to qualified immunity "because the Court has seen no evidence that designing, implementing, and overseeing the ketamine studies violated a clearly established right," and (vi) the claims of Monell liability fail because "the complaint and documents embraced by the complaint do not plausibly allege that the individual Defendants violated Buckley's constitutionally protected rights." Buckley v. Hennepin Cnty. et al., No. 18-cv-3124, Memorandum (D. Mn. Sep. 11, 2019).

Buckley appeals the dismissal of her federal claims. Our standard reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). We review whether the complaint states a cause of action de novo. Id. We construe the Complaint in favor of Buckley, the non-moving party, assuming well-pleaded facts are true, but we do not accept legal conclusions phrased as fact allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim must be plausible on its face to survive dismissal. Id. We may rely on materials "necessarily embraced by the pleadings," including exhibits attached to the complaint and matters of public record. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015). Neither party challenges on appeal the district court's

---

[2] The Honorable Joan Ericksen, United States District Judge for the District of Minnesota.

-3-

consideration of numerous materials as embraced by the pleadings.  Reviewing dismissal of the federal claims under these standards, we affirm.

## I. Claims Against the Paramedics.

A. Excessive Force Claims.  On appeal, Buckley first argues her Complaint sufficiently states a "Fourteenth Amendment excessive force claim" against the paramedics.  In the district court, she argued the paramedics used excessive force violating the Fourth and the Fourteenth Amendment.  The district court agreed with defendants that the Fourth Amendment "objective reasonableness" standard should apply.  See Graham v. Connor, 490 U.S. 386, 394-399 (1989).  Buckley concedes she was properly placed on a medical transport hold and secured on the ambulance gurney, actions that effectuated a Fourth Amendment seizure.  See Green v. City of New York, 465 F.3d 65, 83 (2d Cir. 2006).  The paramedics then allegedly used excessive force when they sedated her with ketamine without her consent while she was fully restrained.

The paramedics were acting as medical responders, not as law enforcement officers, when they sedated Buckley after she had been seized and was being transported to a hospital.  State law authorized the paramedics to "take a person into custody and transport the person to a licenced physician or treatment facility if the officer has reason to believe . . . that the person is mentally ill . . . and in danger of injuring self or others if not immediately detained." Minn. Stat. § 253B.05, subd. 2(a) (2019).[3]  Buckley does not dispute the legitimacy of the medical hold.  Hennepin County's Emergency Medical Services Advanced Life Support protocols provided that "[a]ll patients transported on a Transport Hold should be restrained during transport" and a patient who is severely or profoundly agitated should be sedated.

---

[3]Minnesota amended this statute effective July 2020.  See Minn. Stat. § 253B.051, subd. 1 (2020).

-4-

In two quite similar cases where paramedics administered emergency medical treatment either after seizure or to a person who did not object to seizure, our sister circuits reversed the denial of qualified immunity and dismissed Fourth Amendment excessive force claims. In Peete v. Nashville and Davidson County, paramedics physically restrained an unconscious boy who had experienced an epileptic seizure without ensuring he could breathe, resulting in his death. 486 F.3d 217, 220 (6th Cir. 2007), cert. denied, 553 U.S. 1032 (2008). The Sixth Circuit concluded the paramedics

> were not acting to enforce the law, deter, or incarcerate. . . . They were attempting to help him, although they badly botched the job according to the complaint. . . . The plaintiff's excessive force claim thus looks like a medical malpractice claim rather than a Fourth Amendment or Due Process violation.

Id. at 222. In Thompson v. Cope, 900 F.3d 414 (7th Cir. 2018), the Seventh Circuit reversed the denial of qualified immunity and dismissed Fourth Amendment claims against paramedics who administered a sedative to a mentally disturbed person whom police had restrained and arrested. The court observed that "Fourth Amendment restrictions are almost wholly alien to [a] situation, where paramedics are subject to a distinct set of professional standards and goals aimed at responding to medical emergencies." Id. at 423. "[S]edating the arrestee -- who appear[ed] to the paramedic to be suffering from a medical emergency -- before taking the arrestee by ambulance to the hospital" did not violate the arrestee's clearly established Fourth Amendment rights. Id. at 422. Otherwise, the court observed, paramedics would face a "kind of Catch-22 . . . treat the arrestee or don't treat him, but face a lawsuit either way." Id. at 423. We agree with these decisions.

The courts in these cases considered excessive force claims pleaded under the Fourth Amendment and applied its well-established objective reasonableness standard, as the district court did in this case. On appeal, Buckley argues her status

-5-

was akin to that of the involuntarily committed patient in <u>Andrews v. Neer</u>, 253 F.3d 1052 (8th Cir. 2001), and therefore her excessive force claim "should be analyzed under the Fourteenth Amendment pretrial-detainee objective reasonableness standard." We see this as a distinction without a difference. Under either standard, "liability for *negligently* inflicted harms is categorically beneath the threshold of constitutional due process." <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 396 (2015) (quotation omitted; emphasis in original).

Buckley concedes that her suicidal and intoxicated state made it necessary for paramedics to place her on a medical hold and transport her to the hospital because she was a danger to herself. But she contends that she was not combative when restrained on the gurney and sedation was therefore medically unnecessary. The contemporaneous ambulance run report states that Buckley "attempted kicking, biting and head butting [the paramedics] while she was being removed from her house and taken to the ambulance," and they sedated her "fearing the patient would injure herself fighting the restraints or get out of lower seat belts and kick responders." Buckley asserts the report is false and that the paramedics' sole motivation for sedating her was to enroll her in the ketamine trials and sedate her with ketamine instead of a safer alternative sedative. These are not material fact disputes.

It was not objectively unreasonable for paramedics to administer medical aid to an intoxicated, suicidal, semi-conscious woman who needed medical intervention. The "reasonableness inquiry in an excessive force case is an objective one" and looks only to whether the official's actions were "objectively reasonable in light of the facts and circumstances confronting them, *without regard to their underlying intent or motivation*." <u>Graham</u>, 490 U.S. at 397 (quotation omitted) (emphasis added). There is no constitutional right to be sedated with a particular medication. Whether Buckley needed to be sedated, and if so with what sedative, are questions of appropriate medical care that must be resolved in a medical malpractice action under state law. The district court properly dismissed her excessive force claims.

-6-

B. Substantive Due Process Claims.  Buckley alleges that the paramedics in sedating her with ketamine over her objection violated her Fourteenth Amendment substantive due process right to bodily integrity and were deliberately indifferent to the substantial risk of serious medical injury posed by ketamine sedation.

1. Bodily Integrity Claims.  In Cruzan v. Director, Mo. Dept. of Health, a case involving the controversial issue of a patient's right to die, the Supreme Court observed that "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions."  497 U.S. 261, 278 (1990).  That same year, the Court held that "forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."  Washington v. Harper, 494 U.S. 210, 229 (1990).  A divided panel of this court then stated in Rogers v. City of Little Rock that "[t]he Supreme Court has recognized a substantive due process right to bodily integrity" that "protect[s] against nonconsensual intrusion into one's body and has been seen to permit the right of a competent person to refuse unwanted medical treatment."  152 F.3d 790, 795 (8th Cir. 1998), citing Cruzan and Rochin v. California, 342 U.S. 165 (1952).  Buckley alleges the paramedics violated her right to bodily integrity by giving her unwanted medical treatment.

In a § 1983 substantiative due process lawsuit, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.  See, e.g., Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013).  This constitutional concept "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of liability."  County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  Id. at 849.

-7-

Here, Buckley alleges that paramedics sedated her with an unknown medication against her wishes, resulting in serious adverse medical complications from the ketamine injection. She relies on Harper, where the Court held that inmates have a liberty interest in avoiding forced anti-psychotic medication. 494 U.S. at 221-222. But the Harper Court did not recognize an unfettered right to refuse medication. It held that due process was satisfied because the prison policy was based on the inmate's interest being outweighed by the State's legitimate interest in prison safety and security. Id. at 222-223. Similarly, in Riggins v. Nevada, 504 U.S. 127, 138-139 (1992), and in Sell v. United States, 539 U.S. 166, 185-186 (2003), the Court balanced the governmental interest in medicating a defendant against his wishes prior to trial against whether the medication interfered with his right to a fair trial.

The facts in this case are unlike any of the forced medication cases on which Buckley relies. Here, the paramedics were facing a medical emergency in which it was necessary to restrain the self-destructive Buckley and transport her to a hospital. Perceiving her as dangerously agitated, they sedated her with a commonly used sedative that was known to be faster acting than alternative medications, but which created a greater risk of adverse complications the paramedics were prepared to treat if it incurred, and in fact treated when it did occur. Even if the semi-conscious Buckley was competent to refuse this treatment, the paramedics did not engage in conscience shocking conduct in electing to sedate a suicidal, intoxicated woman to protect both the patient and themselves. Buckley's Complaint did not allege, and her briefs on appeal did not address, the conscience shocking element of this substantive due process claim. The district court did not err in granting the paramedics' Rule 12(c) motion to dismiss.

2. Deliberate Indifference. Buckley alleges the paramedics were deliberately indifferent to the substantial risk of serious medical complications they knew ketamine sedation posed when they injected her with that sedative. Though Buckley was not imprisoned at the time, and therefore the Fourteenth Amendment rather than

-8-

the Eighth Amendment governs her claim, we agree with the parties that the Eighth Amendment deliberate indifference standard applies. "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders [her] unable to care for [herself], and at the same time fails to provide for [her] basic human needs [such as medical care,] it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." DeShaney v. Winnebago Cnty. Dept. of Social Servs., 489 U.S. 189, 200 (1989). To state a claim, Buckley must plausibly allege that the paramedics' conduct, viewed objectively, deprived her of a "minimal civilized measure of life's necessities" when they injected her with the ketamine sedative knowing of but disregarding an excessive risk to her health or safety. Revels v. Vincent, 382 F.3d 870, 875 (8th Cir. 2004).

Placing a person in need of emergency medical care on a medical transportation hold and transporting her to a hospital "demonstrates a deliberate concern for [her] well-being, and not an indifference." Haslar v. Megerman, 104 F.3d 178, 180 (8th Cir. 1997). Likewise, sedating an agitated patient during the trip to the hospital to protect the patient and her emergency medical providers is not deliberate indifference. Quite the contrary. Buckley's Complaint alleged simply that the paramedics knew, "when they administered the ketamine, that there was a substantial risk that [she] would develop respiratory difficulties and require intubation." There were no allegations of what the paramedics subjectively knew about the County's "ketamine trials," or why administering a commonly used sedative evidenced deliberate indifference. The district court properly dismissed these implausible substantive due process claims.

## II. Claims Against the Physicians.

Buckley alleged the defendant doctors are directly liable for excessive force and substantive due process violations because they oversaw the County's ketamine studies and were personally involved in designing, implementing, and overseeing the

-9-

ketamine research.  As the district court recognized, supervising physicians can be held personally liable under § 1983 only "when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference towards the violation."  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

Buckley alleged, with supporting documentary evidence, that she was "enrolled" in the second study, entitled "Ketamine versus Midazolam for Prehospital Agitation," when she was sedated with ketamine in the ambulance.  Results from the prior study, "Ketamine versus Haloperidol for Severe Prehospital Agitation," reported that 49% of patients receiving ketamine suffered complications but only 5% of those who received haloperidol; 39% of those receiving ketamine required intubation compared with 4% of those receiving haloperidol.  Buckley alleged that the defendant doctors knew about the substantial risks of ketamine sedation from the results of the first study and thus were deliberately indifferent to the substantial risk of serious medical injury to patients in authorizing and supervising the second study.

Buckley did not allege that the defendant physicians had any knowledge of or played any role in responding to the call for a welfare check on Buckley, placing her on a medical transportation hold and forcibly securing her in the ambulance, and sedating her for the trip to the hospital.  They are only accused of running the study which caused ketamine to be the sedative used.  Buckley cites to district court decisions holding government agents potentially liable under § 1983 for subjecting persons to dangerous medical experiments without consent or proper disclosure.  In Heinrich ex rel. Heinrich v. Sweet, 62 F. Supp. 2d 282, 314 (D. Mass. 1999), for example, the court stated the elements of this constitutional violation as being that a government actor "(2) without obtaining informed consent and utilizing false pretenses to obtain participation, (3) conduct[ed] medical experiments known to have no therapeutic value and indeed known to be possibly harmful to the subjects." Without addressing whether we agree these elements would establish a constitutional violation, it is obvious the facts alleged by Buckley bear no resemblance to this

-10-

hypothetical claim.  The paramedics were not performing a medical experiment on the semi-conscious Buckley, they were attempting to save her life; no false pretenses were used to obtain her involuntary participation; and the sedative administered was known to have therapeutic value though in some cases with adverse complications.

Buckley's Complaint alleged no personal involvement by the physician defendants in her emergency medical treatment and no subjective recklessness by these supervisory officials.  See Moore ex rel. Moore v. Briggs, 381 F.3d 771, 775 (8th Cir. 2004).  We fail to see how allegations that the County was conducting ill-advised studies concerning the use of three different sedatives in various medical emergencies is relevant to Buckley's specific claims.  Accordingly, we agree with the district court that, at a minimum, these defendants are entitled to qualified immunity. See Greenman, 787 F.3d at 887.

### III. Monell Claims,

"A municipality may be liable under § 1983 where action pursuant to official municipal policy of some nature caused a constitutional tort." Hollingsworth v. City of St. Ann, 800 F.3d 985, 991-992 (8th Cir. 2015), quoting Monell, 436 U.S. at 691. Qualified immunity does not extend to municipal defendants in a § 1983 suit, and municipalities cannot rely on the good faith of their officers or agents as a defense. Owen v. City of Independence, 445 U.S. 622, 638 (1980).  Buckley alleges a Monell claim against Hennepin County, its hospitals, and all individual defendants.  She argues these claims were improperly dismissed because she plausibly alleged that the paramedics violated her constitutional rights by sedating her with ketamine, and those

-11-

Appellate Case: 19-3243   Page: 11   Date Filed: 08/16/2021 Entry ID: 5065647

violations resulted from Hennepin County's ketamine policy. We agree with the district court that these claims must be dismissed because Buckley failed to establish that the paramedics violated her Fourth Amendment or substantive due process rights.

## IV. Conclusion.

For the foregoing reasons, we affirm the judgment of the district court.

GRUENDER, Circuit Judge, concurring in part and concurring in the judgment.

I join the court's opinion except Section I.A., where I concur in the judgment.

Buckley's complaint alleges the following. On December 16, 2017, Buckley's friend called 911 seeking a welfare check for Buckley. Responding officers then called an ambulance. Three paramedics responded. After a brief conversation with Buckley, the paramedics decided to place Buckley on a "medical transportation hold" and insisted that Buckley accompany them to the hospital. Over Buckley's continued objections, the paramedics (and the officers) "stood on her feet, handcuffed her behind her back, and carried her out of the building and into the ambulance." In the ambulance, Buckley was "cuffed to the gurney and strapped down by shoulder harness, and hip, thigh, and ankle straps." At no point did Buckley show any signs of physical resistance or aggression.[4]

As the paramedics began drawing up ketamine (a powerful sedative) into a syringe, Buckley specifically objected to being injected. Immediately before injecting

---

[4]Although the ambulance report says otherwise, the complaint controls. *See West-Anderson v. Mo. Gaming Co.*, 557 F. App'x 620, 622 (8th Cir. 2014) (per curiam); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167-68 (4th Cir. 2016).

-12-

Buckley, the paramedics noted that her Altered Mental State Scale score was a -2. This meant that Buckley would respond only if her name was called loudly, had slurred or slowed speech, a glazed-look in her eyes, and markedly drooping eyelids. Nonetheless, the paramedics injected her with ketamine.  Buckley "immediately developed complications including altered mental status," "abnormally slow breathing," "respiratory distress," and "abnormally rapid heart rate."  Her Altered Mental State score dropped.  She went into respiratory distress requiring the paramedics to ventilate her manually.  And she experienced hypersalivation requiring suction and atropine.  The paramedics took Buckley to the hospital where she was diagnosed with "acute hypoxic (low oxygen) respiratory failure due to ketamine injection."  She required intubation until the next day.

The question is whether the paramedics are entitled to qualified immunity on the claim that their conduct—including their decision to sedate an already-restrained and semi-conscious Buckley—amounted to excessive force in violation of the Fourth Amendment.

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Masters v. City of Independence*, 998 F.3d 827, 835 (8th Cir. 2021).  In determining whether the immunity applies, we consider whether (i) the defendant violated the plaintiff's constitutional or statutory right and (ii) that right was clearly established at the time of the defendant's misconduct.  *Id.*

"The Fourth Amendment protects . . . against unreasonable searches and seizures."  *Torres v. Madrid*, 592 U.S. ---, 141 S. Ct. 989, 995 (2021).  The "application of physical force to the body of a person with intent to restrain is a seizure."  *Id.* at 1003.  "The right to be free from excessive force is included under the

Fourth Amendment's prohibition against unreasonable seizures of the person." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005). Whether the force used was excessive and thus unreasonable is an objective inquiry. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001) (applying the objectively-reasonable standard to an excessive-force claim brought by a patient involuntarily committed at a state mental hospital).

It was objectively unreasonable to sedate Buckley with ketamine. She was about as restrained as a person can be, strapped down on a gurney. She was not and had not been resisting. She was not suspected of a crime. And, by the paramedics' own observations, she was already almost unconscious. *Cf. Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) ("[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public."). In these circumstances, the decision to sedate her with a potent and dangerous drug was "gratuitous and completely unnecessary" and thus objectively unreasonable. *Cf. Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) (denying qualified immunity to officers who jerked an arrestee from the floor to his bed when he "was not resisting," "posed no threat," and "was not suspected of any serious offense"). As Buckley put it, it was objectively unreasonable to "inject a powerful sedative into a . . . semiconscious woman who was fully restrained on an ambulance gurney and exhibiting no physical aggression, violence, or resistance."

In concluding to the contrary, the court relies on the fact that the seizure involved paramedics (not police) who were there to provide aid.[5] *See ante*, at 4-6. But the Fourth Amendment is not limited to police. *E.g.*, *Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001); *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985). Nor is it limited to law-enforcement purposes. *See Caniglia v. Strom*, 593 U.S. ---,

_____

[5] Of course, this ignores the fact that this "aid" was both unwanted and harmful.

-14-

141 S. Ct. 1596 (2021) (applying the Fourth Amendment to a wellness check); *Michigan v. Tyler*, 436 U.S. 499, 504-06 (1978) (applying the Fourth Amendment to firefighters who entered a home to find the cause of a fire). Indeed, we very recently applied the Fourth Amendment to a mental-health seizure. *Graham v. Barnette*, No. 19-2512, 2021 WL 3012338, at *5-6 (8th Cir. July 16, 2021). Neither the paramedics' status nor their purpose immunizes them from constitutional scrutiny. *See Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006) (denying qualified immunity to fire-department lieutenant on excessive-force claim).

And this makes sense. The Fourth Amendment's text is facially agnostic as to the who or the why of a government intrusion. U.S. Const. amend. IV. And "the basic purpose of [the] Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Tyler*, 436 U.S. at 504 (internal quotation marks and ellipsis omitted). Whether the government sent someone in an ambulance or a squad car to seize Buckley is irrelevant. *See id.* at 506 ("[T]here is no diminution in . . . the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman . . . .").

Relatedly, the court says that Buckley's claim involves "questions of appropriate medical care that must be resolved in a medical malpractice action under state law." *Ante*, at 6. Not so. Her claim is not that she received inadequate medical care; her claim is that a government official used a tranquilizer to seize her. *See, Ellis v. City of San Diego*, 176 F.3d 1183, 1190 (9th Cir. 1999) (rejecting a similar attempt to characterize a Fourth Amendment claim as medical malpractice because "the gravamen of [the] complaint [was] not malpractice but the violation of [the plaintiff's] constitutional rights").

-15-

Finally, the court says that "[t]here is no constitutional right to be sedated with a particular medication."  Maybe not.[6]  But Buckley did not bring a § 1983 suit because she favors a different brand of sedative.  Rather, she claims that, under the circumstances here, she had the right to not be forcibly sedated at all.

I nevertheless concur in the judgment regarding Buckley's excessive-force claim because she has not demonstrated that this right was clearly established at the time of the violation.  To be clearly established, the contours of a right must be "sufficiently clear that every reasonable official" would have understood that his conduct "violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Because "excessive force is an area of the law in which the result depends very much on the facts of each case," "existing precedent [must] squarely govern[] the specific facts at issue." *Kisela v. Hughes*, 584 U.S. ---, 138 S. Ct. 1148, 1153 (2018) (per curiam). Here, Buckley has not pointed to any decision that resembles this one.  Accordingly, I concur in the court's judgment granting the paramedics qualified immunity concerning Buckley's excessive-force claim.

––––––––––––––––––––––––––––

---

[6]*But see*, *Baze v. Rees*, 553 U.S. 35, 52 (2008) (holding in the Eighth Amendment context that the government's choice of drug can violate the Constitution); *but cf. Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (holding that a pretrial detainee has at least as much protection as a prisoner).

-16-